## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## TYLER DIVISION

| | | |
|---|---|---|
| LESLEY GATHERIGHT | § | |
| | § | |
| V. | § | CASE NO. 6:06-CV-487 |
| | § | |
| GARY SWINDLE | § | |

## MEMORANDUM OPINION AND ORDER
## ON MOTION FOR SUMMARY JUDGMENT

Came on for consideration this day Defendant's Motion for Summary Judgment (Doc.
No. 40), wherein Defendant moves the Court to dismiss all claims against Defendant for lack
of evidence and on grounds of absolute or official immunity.  Having reviewed the
Defendant's motion, the response, and the reply, and having heard the argument of counsel,
the Court finds that the Defendant's motion should be granted.

## BACKGROUND

This case involves allegations that Defendant Gary Swindle, the Police Chief for the
City of Tyler, Texas, libeled and slandered Plaintiff Gatheright when he made the following
statements, which were printed in the Tyler Morning Telegraph, a local newspaper, and on
Tylerpaper.com:

That Gatheright "gave people money" to come forward and file law suits.

That Gatheright "harassed a witness to come forward and make false allegations to
the Grand Jury."

(Complaint at 3, ¶ 6.)  In his claim for libel and slander, the Plaintiff argues that these allegations are defamatory and false.  Plaintiff also brings a claim for intentional infliction of emotional distress arising from the same set of facts.

The uncontested evidence indicates that this case arises from an incident in which Tyler resident Terance Arness "Shaky" Raibon was killed when "gunfire erupted" between Raibon and Tyler Police on or about August 1, 2003.  Following the incident, Plaintiff Gatheright, who describes himself as a "civil rights consultant," met and talked with several alleged eyewitnesses of the shooting, who told Gatheright that the Tyler Police had shot Raibon in the back while he was trying to flee, and that Tyler Police officers repeatedly shot Raibon after he was already mortally wounded.  Gatheright then entered into a written consulting contract with Mary Raibon, the mother of Shaky Raibon, which provided for Gatheright to receive a 15 to 20 percent contingency fee out of any recovery from a suit filed concerning the death of her son.  Gatheright also entered into a similar contract with the mother of Shaky Raibon's child.

On September 4, 2003, the grand jury "no-billed" the Tyler police officers involved in the shooting.  Several weeks later, Gatheright contacted local news outlets, including the Tyler Morning News, and presented two witnesses for an interview at the Tyler newspaper office.  On September 28, 2003, the Tyler newspaper reported comments by Kendrick Williams, in which Williams stated that he had witnessed Tyler Police shoot Raibon in the

back while he was lying on the ground.  The report also quoted Gatheright, who claimed to be speaking on behalf of the Raibon family, calling for a federal investigation of the incident.

Gatheright states in his deposition that he also transported two witnesses to the Smith County district attorney's office to be interviewed regarding what they had witnessed.  The grand jury reopened the inquiry soon thereafter, and the witnesses testified before the grand jury, claiming that they had witnessed police misconduct.  The grand jury again declined to return an indictment against the police officers.

Reportedly as a result of Mr. Gatheright's efforts at bringing alleged civil right violations to light, the FBI began an investigation into the matter, but closed its investigation in July of 2005 and declined to prosecute the officers for civil rights violations.

In 2006, after the statute of limitations for perjury had expired against the four witnesses who testified in 2003 to having witnessed police misconduct, the same witnesses executed affidavits recanting their testimony.  One witness attested that "I would never have gotten involved in this if it hadn't been for the pressure placed on me by Les Gatheright.  Mr. Gatheright 'hounded' me, repeatedly came to my house, and pressured me to be involved in making statements to the media about this incident."

On July 23, 2006, the Tyler newspaper reported that "[f]our witnesses who testified nearly three years ago in the police shooting of Terance 'Shaky' Raibon have come forward with sworn affidavits admitting that they were untruthful to a Smith County grand jury."  The article further reported comments by Chief Swindle on Gatheright's involvement:

Swindle said Gatheright, who was not involved in the case in any way, began an "ambulance chase," making complaints and giving people money to file lawsuits.  He also harassed a witness to come forward and make false allegations to the grand jury, which the police chief said was unbelievable.

Swindle said a lawsuit was never filed in the case and he believed Gatheright had left Tyler, where he had an office for his consulting company, ABD & Associates.

(Def.'s Mot., Ex. P at 2.)

In his present motion, Defendant Swindle argues that Gatheright has no evidence to support his defamation claim or his claim for intentional infliction of emotional distress, and that Swindle is entitled to immunity from suit.

## SUMMARY JUDGMENT STANDARD

A motion for summary judgment should be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323–25 (1986); *Ragas v. Tennessee Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998).  The moving party must show initially that there is no genuine issue concerning any material fact in the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 256 (1986). A fact is "material" if it might affect the outcome of the suit under the governing law.

*Anderson*, 477 U.S. at 248; *Merritt-Campbell, Inc. v. RxP Products, Inc.*, 164 F.3d 957, 961 (5th Cir. 1999).  Issues of material fact are "genuine" only if they require resolution by a trier of fact and if the evidence is such that a reasonable jury could return a verdict in favor of the non-moving party.  *Anderson*, 477 U.S. at 248; *Merritt-Campbell, Inc.*, 164 F.3d at 961.  The moving party may also meet its summary judgment burden by pointing to the absence of evidence supporting any non-movant's claim.  *Celotex Corp.*, 477 U.S. at 325.

Once the moving party has satisfied its burden, the party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials in its pleading, but must "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256.  The non-movant is required to identify evidence in the record and articulate the manner in which that evidence supports the non-movant's claim.  *Ragas*, 136 F.3d at 458.  If the non-movant fails to set forth specific facts to support an essential element in that party's claim and on which that party will bear the burden of proof at trial, then summary judgment is appropriate.  *Celotex Corp.*, 477 U.S. at 322–23.

When ruling on a motion for summary judgment, the court is required to view all inferences drawn from the factual record in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Merrit-Campbel, Inc.*, 164 F.3d at 961.  "Only disputes over facts that might affect the outcome of the suit under the governing laws will properly preclude the entry of summary

judgment." *Anderson*, 477 U.S. at 248.  Irrelevant or unnecessary factual disputes should not be considered.  *Id.*

## DISCUSSION

### I.      Libel and Slander Claims

To maintain a defamation claim, a plaintiff must prove that the defendant: (1) published a statement; (2) that was defamatory concerning the plaintiff; (3) while acting with either actual malice, if the plaintiff was a public official or public figure, or negligence, if the plaintiff was a private individual, regarding the truth of the statement.  *WFAA-TV, Inc. v. McLemore*, 978 S.W.2d 568, 571 (Tex. 1998).  If the plaintiff is a limited-purpose public figure, that plaintiff also bears the burden of proving that the defendant's statements are false.  *Bentley v. Bunton*, 94 S.W.3d 561, 586 (Tex. 2002).

Defendant Swindle argues first, that Gatheright is a limited-purpose public figure, and that Gatheright must prove that any defamatory statements made against him were false and were made with actual malice.  Chief Swindle further argues (1) there is no evidence that the defendant's comments were defamatory; (2) there is no evidence that the defendant's comments were false; (3) there is no evidence that the defendant acted with actual malice; and (4) there is no evidence that the defendant's comments caused injury to Gatheright.

### 1.      Whether Gatheright is a Limited-Purpose Public Figure

A limited-purpose public figure must establish that the defendant's defamatory statements were made with actual malice.  *WFAA-TV*, 978 S.W.2d at 573.  "Actual malice"

is defined as "the publication of a statement 'with knowledge that it was false or with reckless disregard of whether it was false or not.'"  *Id.* at 573–74 (citing *New York Times Co. v. Sullivan*, 376 U.S. 254, 279–80 (1964)).  A limited-purpose public figure must also prove that defamatory statements made about him were false.  *Bentley*, 94 S.W.2d at 586 (citing *New York Times*, 376 U.S. at 279–80).  The question of whether a person is a limited-purpose figure is a matter of law.  *WFAA*, 978 S.W.2d at 571.

A plaintiff is a limited-purpose public official if he meets the following three-step test: (1) the controversy at issue must be public both in the sense that people are discussing it and people other than the immediate participants in the controversy are likely to feel the impact of its resolution; (2) the plaintiff must have more than a trivial or tangential role in the controversy; and (3) the alleged defamation must be germane to the plaintiff's participation in the controversy.  *Trotter v. Jack Anderson Enterprises, Inc.*, 818 F.2d 431, 433–34 (5th Cir. 1987); *WFAA*, 978 S.W.2d at 571 (citing *Trotter*).

Under the first element, the controversy at issue is clearly one that extends beyond Gatheright and Chief Swindle, as evidenced by numerous newspaper articles and participants, and concerning a matter of public importance—allegations of that the police department had seriously violated a local resident's civil rights.  Indeed, Gatheright noted in his deposition that the Raibon shooting incident was a public controversy in which the media was very interested.

Under the second element, the evidence clearly establishes that Gatheright had more than a tangential role in the controversy. Indeed, the evidence shows that he is uniquely responsible for much of the investigation of the case after the grand jury's first decision to no-bill the police officers in early September 2003. Gatheright contacted the local newspaper as the consultant and spokesman for Mary Raibon, and had contact with the media regarding Shaky Raibon's shooting on numerous occasions. Gatheright testified that, in his role as a consultant, he saw the media "as a vehicle to communicate information." Gatheright stated that he contacted the newspaper "to make sure that Ms. Raibon's side and her concerns was heard and addressed concerning her son's death." Gatheright also testified that the media "would often call me and ask for statements" and he testified that he was not reluctant to talk to the media.

Furthermore, Gatheright encouraged alleged eyewitnesses to tell their stories to the local newspaper and the district attorney, and he even provided transportation for these witnesses to the newspaper and to the district attorney's office. An October 3, 2003 article noted that the FBI had begun an investigation "after learning Tennessee-based consultant Lesley Gatheright and members of Raibon's family claimed the dead man's civil rights had been violated." The paper further reported Gatheright as commenting that he was pleased that the federal investigation was under way. Gatheright, as the acknowledged catalyst for further state and federal investigations in to the matter, clearly played more than a trivial or tangential role in the controversy.

As to the third element, Chief's Swindle's comments about Gatheright are clearly germane to the controversy over whether Tyler police officers had violated Raibon's civil rights.

Having established that Gatheright is a limited-purpose public figure, he must produce evidence that Chief Swindle's statements about him were false and were made with actual malice before Chief Swindle may be found liable.

### 2.    Evidence that Defendant's Statements Were Defamatory

"Libel" is defamation expressed in written form that tends to injure one's reputation, exposing one to public hatred, contempt, or ridicule, or financial injury or to impeach any person's honesty, integrity, virtue, or reputation.   TEX. CIV. PRAC. & REM. CODE ANN. § 73.001 (Vernon 2005).  The Court finds that the Defendant's statements that Plaintiff was "giving people money to file lawsuits" and "harassed a witness to come forward and make false allegations to the grand jury" could reasonably be construed as accusing Plaintiff of the crimes of barratry and suborning perjury.  Such accusations certainly tend to impeach a person's honesty, integrity, virtue, and reputation.  *Id*.  Accordingly, a genuine issue exists for trial as to whether Chief Swindle made a defamatory statement.

### 3.    Evidence That the Defendant's Comments Were False

A genuine fact issue clearly exists as to whether Plaintiff did in fact pay anyone to file a lawsuit connected with the Raibon shooting or whether Plaintiff actually persuaded anyone to make what Gatheright knew to be perjured testimony before a grand jury.

Nevertheless, Chief Swindle argues that the "substantial truth" test ought to be employed to determine if his statements were false.  In Texas, a party may avoid liability if his defamatory statements were "substantially true."  *Turner v. KTRK Television, Inc.*, 38 S.W.3d 103, 115 (Tex. 2000).  Under Texas law, "[t]he test used in deciding whether [a statement] is substantially true involves consideration of whether the alleged defamatory statement was more damaging to [the plaintiff's] reputation, in the mind of the average listener, than a truthful statement would have been."  *Id*. at 133 (quoting *McIlvain v. Jacobs*, 794 S.W.2d 14, 16 (Tex. 1990)) (alterations in original).  Under the "substantial truth" doctrine, "the meaning of a publication, and thus whether it is false and defamatory, depends on a reasonable person's perception of the entirety of a publication and not merely on individual statements."  *Turner Id*. at 115.  Therefore, under the substantial truth doctrine, a defendant is not liable for a publication "that correctly conveys a story's 'gist' or 'sting' although erring in the details."  *Id*.

Chief Swindle argues, first, that his statement that Gatheright was "giving people money to file lawsuits" is substantially true because Gatheright had signed consulting contracts with Mary Raibon and with the mother of Shaky Raibon's child which would provide Gatheright a percentage of any civil recovery related to the shooting incident.  Swindle further argues that Gatheright's web site advertised case-based funding and described how Gatheright could arrange to advance people money who were in the process of filing law suits.  Indeed, Gatheright testified during his deposition that he was trying to

structure case-based funding in relation to the Raibon matter, though he was not successful in doing so.  In addition, Gatheright testified that he had contacted several attorneys about the possibility of filing a civil suit, though none of them chose to take the case.

The newspaper article in which Chief Swindle's defamatory statements were published had itself mentioned Gatheright's involvement in producing witnesses to testify regarding the shooting.  The complete sentence at issue stated, "Swindle said Gatheright, who was not involved in any way, began an 'ambulance chase,' making complaints and giving people money to file lawsuits."  Gatheright testified that he did in fact attempt to recruit attorneys to file lawsuits on behalf of Mary Raibon from which he was entitled to a percentage of any recovery.  Gatheright also admitted that he was attempting to provide "case-based funding" to help with such filing, but that he was unable to find a lawyer to take the case.  The Court finds that there is no genuine issue for trial as to whether Chief Swindle's statement correctly conveys the "gist" of what Gatheright was attempting to do and that Swindle's statement was no more damaging to Gatheright's reputation than a truthful statement would have been.  Accordingly, Gatheright does not have a cause of action based on Chief Swindle's statement that Gatheright was "giving people money to file lawsuits."

Chief Swindle further argues that his second statement—that Gatheright "harassed a witness to come forward and make false allegations to the grand jury"—is also substantially true.  Swindle points to a statement by one of the witnesses, Terrace Black, in his 2006 affidavit, in which Black stated "I would never have gotten involved in this if it hadn't been

for the pressure placed on me by Les Gatheright.  Mr. Gatheright 'hounded' me, repeatedly came to my house, and pressured me to be involved in making statements to the media about this incident.  I regret any unnecessary embarrassment that my statements may have caused anyone."  Swindle argues that he did not suggest that Gatheright personally caused any witness to give false testimony.

The Court disagrees, however.  A reasonable interpretation of Chief Swindle's statement that Gatheright "harassed a witness to come forward and make false allegations to the grand jury" is that Gatheright knowingly asked someone to give false testimony to the grand jury.  On this matter, Swindle has produced no evidence to support an allegation that Gatheright actually asked someone testify falsely.  Each recanting witness's affidavit indicated that they originally believed the truth of their testimony and only on further reflection questioned the accuracy of what they had stated.  Given these facts and the evidence, a statement that Gatheright harassed someone to testify to a lie is certainly more damaging than a statement that Gatheright "hounded" someone to testify to the truth.  Given these facts, the Court finds that the Chief Swindle's statement is not substantially true, or at least that a genuine issue of fact exists as to whether the statement was true or not.

### 4.    Evidence That the Defendant Acted with Actual Malice

Given that Plaintiff is a limited-purpose public figure, he must also prove that the Defendant made the defamatory statements with "actual malice."  *WFAA*, 978 S.W.2d at 573.  "Actual malice" does not mean with bad motive or ill will.  *Bentley*, 94 S.W.3d at 590.

Rather "actual malice" means "knowledge of, or reckless disregard for, the falsity of a statement." *Id*. at 591.  Here, Defendant argues that Gatheright has no evidence that the Defendant acted with actual malice.

Though knowledge of falsehood is a relatively clear standard, reckless disregard is less clear.  Reckless disregard

is a subjective standard that focuses on the conduct and state of mind of the defendant.  It requires more than a departure from reasonably prudent conduct. Mere negligence is not enough.  There must be evidence that the defendant in fact entertained serious doubts as to the truth of his publication, evidence that the defendant actually had a high degree of awareness of [the] probable falsity of his statements.  Thus, for example, the failure to investigate the facts before speaking as a reasonably prudent person would do is not, standing alone, evidence of a reckless disregard for the truth, but evidence that a failure to investigate was contrary to a speaker's usual practice and motivated by a desire to avoid the truth may demonstrate the reckless disregard required for actual malice.

*Id*. at 591 (internal quotations and citation omitted).  A plaintiff is entitled to prove a knowing or reckless state of mind, however, with circumstantial evidence.  *Id*.

Plaintiff here argues that Swindle likely reviewed the affidavits of the eyewitnesses in making his statements to the press, and that the affidavits indicate that each speaker had

a subjective belief in the truth of their statements when they were made.  Plaintiff argues that this evidence is sufficient to raise a genuine issue of fact as to the Defendant's state of mind when he accused the Plaintiff of suborning perjury.  The Court agrees, and finds that a genuine issue exists for trial as to whether the Defendant acted with actual malice.

5.    **Evidence That the Defendant's Actions Caused Injury to the Plaintiff**

Chief Swindle also challenges that the summary judgment evidence establishes that Gatheright has not suffered injury either because he has no evidence of injury, or because he is "libel proof" and may not be injured as a matter of law.

As a matter of law, statements that are defamatory per se injure the victim's reputation and entitle him to recover general damages, including damages for loss of reputation and mental anguish.  *Bentley*, 94 S.W.3d at 604.  Where a defendant's statements accuse a plaintiff of conduct that affects a person injuriously in his office, profession, or occupation, such comments are libelous per se.  *Bradbury v. Scott*, 788 S.W.2d 31, 38 (Tex. App.—Houston [1st Dist.] 1990, writ denied).  In addition, to charge one falsely with the commission of a crime for which he may be punished by imprisonment is libel per se. *Christy v. Stauffer Publications, Inc.*, 437 S.W.2d 814, 815 (Tex. 1969).  The Defendant's charge that Plaintiff suborned perjury is therefore libelous per se and the Defendant's injury is presumed.

Defendant further argues, however, that the plaintiff is "libel proof" in light of other media reports about him as well as his record of multiple personal bankruptcies.  Texas

courts have recognized that a plaintiff may be "libel proof" in certain cases.  *See Finklea v. Jacksonville Daily Progress*, 742 S.W.2d 512 (Tex. App.—Tyler 1987, writ dism'd) (applying "libel proof" plaintiff doctrine); *Swate v. Schiffers*, 975 S.W.2d 70, 74 (Tex. App.—San Antonio 1998, pet. denied) (physician was "libel proof" because of past instances of misconduct, litigation, and discipline involving his medical practice).  Nevertheless, as noted in *Finklea*, "[t]here are few so impure that cannot be traduced.  Although a person's general reputation may be so bad as to render him libel proof on all matters, ordinarily even the public outcast's remaining good reputation is entitled to protection."  742 S.W.2d at 516.

In this case, the Court finds that Gatheright's past bankruptcies do not soil his reputation so severely that he is not susceptible to injury in matters relating to his business or personal reputation.  Moreover, the "other media reports" that pertain to Gatheright describe him with advocating a cause and seeking out media attention.  These matters are not so severe as to make Gatheright "libel proof," especially where the alleged defamation accuses the Plaintiff with the commission of a crime.  Accordingly, at the very least a genuine issue of fact exists as to Gatheright's injury.

For the above stated reasons, the Court finds that a genuine issue of fact exists for trial as to Gatheright's claims for defamation.

## II.    Intention Inflicction of Emotional Distress

Gatheright claims that Chief Swindle is also liable to him for intentional infliction of emotional distress arising out of the same conduct upon which Gatheright bases his

defamation claim.  In Texas, "intentional infliction of emotional distress is a 'gap-filler' tort never intended to supplant or duplicate existing statutory or common-law remedies." *Creditwatch, Inc. v. Jackson*, 157 S.W.3d 814, 816 (Tex. 2005) (citing *Hoffmann-La Roche, Inc. v. Zeltwanger*, 144 S.W.3d 438, 447 (Tex. 2004)); *see Moser v. Roberts*, 185 S.W.3d 912, 915 (Tex. App.—Corpus Christi 2006, no pet.) ("[W]here the gravamen of a plaintiff's complaint is really another tort, IIED is not available as a cause of action.").  In that vain, at least one Texas court has held that a claim for intentional infliction of emotional distress should not be available where the "gravamen" of the plaintiff's complaint was libel and slander.  *Moser*, 185 S.W.3d at 916.  Accordingly, it is doubtful whether Gatheright may actually assert a claim for intentional infliction of emotional distress based on the alleged facts.

Nevertheless, because Texas law is not completely clear on this matter, the Court considers whether Gatheright has produced evidence to support his claim for intentional infliction of emotional distress.  To recover for his claim for intentional infliction of emotional distress, Gatheright must prove that (1) the Chief Swindle acted intentionally or recklessly; (2) the Swindle's conduct was extreme and outrageous; (3) the Swindle's actions caused Gatheright emotional distress; and (4) Gatheright's emotional distress was severe. *Texas Farm Bureau Mut. Ins. Companies v. Sears*, 84 S.W.3d 604, 610 (Tex. 2002).

Chief Swindle argues, first, that his actions were not extreme or outrageous as a matter of law.  "To be extreme and outrageous, a defendant's conduct must be 'so outrageous in

character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society.'" *Id.* (quoting *Twyman v. Twyman*, 855 S.W.2d 619, 621 (Tex. 1993)).  The Court must determine "whether the defendant's conduct may reasonably be regarded as so extreme and outrageous as to permit recovery." *Id.* (quoting *Wornick Co. v. Casas*, 856 S.W.2d 732, 734 (Tex. 1993)).

Though Gatheright has alleged that Chief Swindle made false accusations of criminal behavior in the area of Gatheright's chosen profession, the Court finds that, given the context in which the statement was made—through a public media outlet after revelations that individuals had given false testimony—Chief Swindle's conduct is not so outrageous so as to be beyond all bounds of decency.  To the extent that Chief Swindle's conduct may constitute libel, Gatheright may recover under his defamation claim.

Furthermore, Gatheright has failed to produce any evidence that his emotional distress was severe.  Accordingly, the Court finds that the Plaintiff's claim for intentional infliction of emotional distress should be dismissed.

### III.    The Defendant's Immunity Defense

Defendant Swindle also pleads defenses of sovereign, absolute, and official immunity to all of Gatheright's claims.  Immunity to suit is a defense for which the defendant bears the burden of proof.  *See Telthorster v. Tennell*, 92 S.W.3d 457, 460 (Tex. 2002) (noting that a government employee bears the burden of establishing the elements of official immunity).  Preliminarily, Gatheright concedes that he may only bring claims against Swindle in his

individual capacity and not in his official capacity.[1]   Accordingly, the Court need not

consider whether Gatheright's claims are barred by sovereign immunity. The Court therefore

considers whether Chief Swindle is immune from suit in his individual capacity, either

through absolute or official immunity.

### 1.    Absolute Immunity

Chief Swindle argues that he is protected by absolute immunity to Gatheright's claims

because he was a "high ranking public official" and was free to exercise his duties without

the fear of damage suits in response to acts done in the course of those duties.  He further

argues that he has absolute immunity because the comments were made in the course of a

judicial or quasi-judicial proceeding.

First, absolute immunity for "high ranking public officials" may arise where an

official is performing a governmental duty. *See Barr v. Matteo*, 360 U.S. 564, 574–75 (1959)

(holding that press release issued by acting director of Office of Rent Stabilization regarding

employee termination was within scope of director's official duties and absolutely

privileged); *City of Cockrell Hill v. Johnson*, 48 S.W.3d 887, 898 (Tex. App.—Fort Worth

2001, pet. denied) (finding that city officials were immune from suit for statements made

during or after city council meeting after an official decision to fire the police chief as hiring

and firing of employees was governmental function).  The cases cited on this point, however,

---

[1] A suit against a government official in his or her official capacity is treated as a suit
against the governmental entity itself.  *See Will v. Michigan Dept. of State Police*, 491 U.S. 58,
71 (1989); *Herring v. Houston Nat. Exch. Bank*, 253 S.W. 813, 814 (Tex. 1923); *Scott v. Britton*,
16 S.W.3d 173, 180 (Tex. App.—Houston [1st Dist.] 2000, no pet.).

are limited to statements made by officials in the context of the dismissal of government employees.  While the firing of governmental employees is a government function, Chief Swindle fails to present any argument or evidence supporting a conclusion that his making statements to the media regarding investigations conducted by *other* agencies—in this case the county district attorney and grand jury—are necessarily governmental functions.  Because it is not clear from the facts, and Swindle fails to argue, how his statements fit into the absolute immunity privilege reserved for high-ranking officials, the Court finds that Swindle has failed to meet his burden on summary judgment to establish this immunity.

Swindle further argues that he is entitled to immunity because his statements were made in the course of a judicial or quasi-judicial proceeding.  *See Reagan v. Guardian Life Ins. Co.*, 166 S.W.2d 909, 111 (Tex. 1942).  Again, Chief Swindle fails to argue how he was officially involved in the grand jury proceeding at issue and why he is entitled to immunity in the given context.  Accordingly, Chief Swindle has also failed to meet his burden to establish immunity based on a judicial or quasi-judicial proceeding.

### 2.    Official Immunity

Chief Swindle also claims to be protected by official immunity.  Under Texas law, a government official is entitled to official immunity for (1) the performance of discretionary duties (2) that are within the scope of the official's authority, (3) provided that the official acts in good faith.  *Telthorster*, 92 S.W.3d at 461.  To obtain summary judgment on the basis of official immunity, a governmental employee must conclusively establish each of these

elements.  *Id*.  When determining whether an employee's summary judgment proof conclusively establishes an official immunity defense, the court must determine whether there are disputed facts that are material to the defense's elements.  *Id*.

As to the first and second elements, Chief Swindle states in his affidavit that it is within the scope of his duties a Chief of Police for the City of Tyler to "respond to questions from members of the news media about the activities of the police department."  He further indicates that his authority and discretionary duties include "gathering information about actions taken by police officers, responding to community concerns about those actions, evaluating the information I obtain, and determining what further action should be taken in response to such information."  In response, Gatheright fails to present evidence creating a genuine issue of fact as to whether Swindle's statement to the news media about Gatheright constituted the performance of discretionary duties within the scope of Chief Swindle's authority as Chief of Police.  Rather, Gatheright argues that Chief Swindle does not have authority to "falsely accus[e] private citizens of the crimes of barratry and suborning perjury."  This argument, however, really speaks to the third element, that of good faith, rather than to whether the challenged actions were within the scope of Chief Swindle's authority.  Also, Gatheright argues that statements about Gatheright are *ultra vires* because Gatheright was not one of the recanting eyewitnesses.  As discussed earlier, however, Gatheright clearly injected himself into the situation, and one of the recanting eyewitnesses identified Gatheright in his recanting affidavit.  Accordingly, statements about Gatheright's

admittedly substantial involvement in an investigation involving the City of Tyler Police Department were within the scope of Swindle's authority as Chief of Police.

As for the third element, a government official acts in "good faith" if a reasonably prudent official acting in the same or similar circumstances could have believed that the official's conduct was justified based on the information he possessed when the conduct occurred. *Ballantyne v. Champion Builders, Inc.*, 144 S.W.3d 417, 426 (Tex. 2004). Here, Chief Swindle indicates that he believes his conduct was justified based on the information he possessed at the time. Indeed, the Court finds that, given the information available to Chief Swindle, a reasonably prudent officer could have believed that Gatheright had urged witnesses to testify falsely. This is especially true given Chief Swindle's substantially true belief that Gatheright was paying people to file civil lawsuits, the fact that Gatheright was seeking personal benefit by securing an interest in civil suits arising from the shooting of Shaky Raibon, and because Gatheright had personally produced several witnesses to testify all of whom later recanted, and at least one of which indicated that he would not have testified but for the pressure placed on him by Gatheright. Indeed, the same article that published Chief Swindle's statements cited the district attorney as having considered prosecuting Gatheright for tampering with a witness, though he also stated that there was no evidence that Gatheright had told the witness what to say. At the time Chief Swindle made his statement, however, there was no evidence that he had personally been involved in the district attorney's investigation into possible perjury charges. Accordingly, the Court finds

Page 21 of 22

that Gatheright's claims against Chief Swindle are barred by official immunity and that Gatheright's claims against Chief Swindle should be dismissed.

<u>**CONCLUSION**</u>

Because the Plaintiff's claims are barred by official immunity, the Court finds that the Defendant's motion for summary judgment should be, and hereby is, **GRANTED**.  It is further

**ORDERED** that all of the Plaintiff's claims are hereby **DISMISSED**.  It is further

**ORDERED** that, there being no further claims or parties, this case is **CLOSED**.

**It is SO ORDERED.**

**SIGNED this 7th day of August, 2007.**


MICHAEL H. SCHNEIDER
UNITED STATES DISTRICT JUDGE